UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ROBERT MICHAEL BAGETTA, et al.,

        Plaintiffs,        Case No. 1:07-cv-27

v.        HON. JANET T. NEFF

PATRICIA CARUSO, et al.,

        Defendants.
                                      /

## OPINION

This is a civil rights action brought by four state prisoners pursuant to 42 U.S.C. § 1983. On May 21, 2007, this Court ordered service of Plaintiffs' complaint on Defendants. On July 5, 2007, Defendants Caruso, Straub, Wolfe, Berghuis, R. Smith, B. Smith, D'Epifanio, Minnerick and Kanu filed a motion for summary judgment (docket # 40) on the ground that Plaintiffs failed to exhaust their available administrative remedies. Plaintiffs filed a response (docket # 57) on or about July 30, 2007. Upon review, Defendants' motion for summary judgment will be denied.

### Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

This is a civil rights action brought by four state prisoners - Michael Bagetta, Jeffrey Maxon, Michael Swiatkowski, and Robert McElhinney. In their *pro se* complaint, Plaintiffs sue Michigan Department of Corrections (MDOC) Director Patricia Caruso, MDOC Deputy Director Dennis Straub, MDOC Region II Director Ray Wolfe and the following employees of the E.C. Brooks Correctional Facility (LRF): Warden Mary Berghuis, Deputy Warden Rick Smith, Assistant Warden Bobbie Smith, Assistant Deputy Warden Sandra D'Epifanio, Resident Unit Manager Mary Munday,[1] Grievance Coordinator J. Minnerick and Resident Unit Officer (unknown) Kanu.

In their complaint, Plaintiffs claim that Defendants violated their Eighth Amendment rights by failing to comply with state and federal law requiring tobacco-free living units for non-smoking prisoners. Plaintiffs made numerous complaints and filed grievances about the failure to enforce the smoking ban. (Compl., at 7-11.) Plaintiffs claim that Defendant Kanu began to threaten and harass them in retaliation for their complaints. (Compl., at 12.) On October 25, 2006, while Plaintiffs were sitting at a table in the day room at LRF, Defendant Kanu allegedly came in and told the other prisoners in the day room "that Plaintiffs Bagetta, Maxon, Swiatkowski and other white guys sitting at the round table wants [sic] the rules, policies and laws enforced, so now this is why

---

[1] Defendant Munday has not entered an appearance in this case and is not a party to Defendants' motion for summary judgment.

all your [sic] prisoners are receiving [misconduct] tickets." (*Id.*) Kanu also showed the prisoners the notice of intent that Plaintiffs had written to prison officials for not enforcing the laws, policies and rules regarding smoking. Plaintiffs further claim that on October 30, 2006, Kanu advised Plaintiff Bagetta's roommate that he should move out of that room, stating "in case something happens to Bagetta, I don't want to see you harmed." (*Id.*) In addition, Plaintiffs claim that on November 5, 2006, Kanu again came into the day room and told the prisoners that they all were getting misconduct tickets because "they [Plaintiffs] want me to do my job and enforce the rules."

Plaintiffs claim that Kanu's statements created a hostile environment and placed them in imminent danger of assault by other prisoners in violation of their Eighth Amendment rights. (Compl., at 13.) On November 1, 2006, Plaintiffs sent Defendants a written "Prior Warning of Danger" to notify them of the threats, retaliation and harassment by Defendant Kanu. (*Id.*) Plaintiffs claim that Defendants failed to take corrective action to enforce the smoking ban and protect them from the hostile and dangerous environment created by Defendant Kanu in violation of the Eighth Amendment. (*Id.*) Plaintiffs also contend that all staff conspired with Defendant Minnerick to prevent Plaintiffs from grieving their claims by placing them on modified access restriction. (Compl., at 14.)

Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages.

## Discussion

I.  **Applicable Law**

Defendants claim that they are entitled to summary judgment because Plaintiffs failed to exhaust their available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his

4

available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

## II.   **MDOC Grievance Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."

---

[2]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

### III. **Plaintiffs' Grievances**

In their motion for summary judgment and supporting brief, Defendants address various grievances filed by Plaintiffs in 2006. Defendants claim that Plaintiffs failed to exhaust their administrative remedies, except for the following claims which were properly exhausted through the

6

three-step grievance process: Plaintiffs Bagetta, Swiatkowski and Maxon's claim against Defendant R. Smith regarding the failure to comply with state and federal law requiring a tobacco-free housing unit and Plaintiff McElhinney's claim against Defendant Berghuis regarding the failure to comply with state and federal law requiring a tobacco-free housing unit. Defendants contend that Plaintiffs failed to properly exhaust the claims set forth in the remaining grievances because they were rejected as duplicative of previous filed grievances. The Grievance Policy provides that a grievance may be rejected if "[i]t is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶G(1).

In response to Defendants' motion for summary judgment, Plaintiff Bagetta disputes that the rejected grievances were duplicative because, while they raised the same issue as a previous filed grievance, they were filed against different individuals. In addition, Plaintiffs claim that they were placed on modified access restriction for ninety days, beginning on October 18, 2006. According to a memorandum from Defendant Berghuis, Plaintiffs were placed on modified access because they "abused the process by filing grievances that are excessive, duplicative, contain extraneous information, are lacking in merit of jurisdiction, identical to other individual grievances by other prisoners as an organized protest or have otherwise been rejected." (10/16/06 Berghuis Memo, docket #58.) With regard to modified access, the grievance policy provides in part:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I grievance coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in [the] policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the prisoner or parolee shall be notified that the grievance will not be processed.

7

MICH. DEP'T. OF CORR., Policy Directive 03.02.130, at ¶ MM. Plaintiffs provided copies of several Step I grievances that each of them attempted to file while on modified access. The grievances appear to include all of Plaintiffs' claims against all of the named Defendants. All of these grievances are stamped "rejected." As noted by Plaintiffs, no explanation is provided for the rejections. Because Plaintiffs were on modified access, they had no further "available" administrative remedy with regard to claims asserted in the grievances. In their motion for summary judgment, Defendants addressed only those grievances filed by Plaintiffs before they were placed on grievance restriction. Defendants did not address Plaintiffs' attempts to file grievances while on modified access. Further, Defendants did not file any reply to Plaintiffs' response arguing that Plaintiffs failed to properly follow the modified access procedures. Consequently, Defendants fail to satisfy their burden of proof.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (docket #18) will be denied.

An Order consistent with this Opinion will be entered.


Dated: March 12, 2008                    /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge