UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MICHAEL BAGETTA, et al.,

        Plaintiffs,        Case No. 1:07-cv-27

v.        HON. JANET T. NEFF

PATRICIA CARUSO et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by four state prisoners: Michael Bagetta, Jeffrey Maxon, Michael Swiatkowski, and Robert McElhinney. In their *pro se* complaint, Plaintiffs sue Michigan Department of Corrections (MDOC) Director Patricia Caruso, MDOC Deputy Director Dennis Straub, MDOC Region II Director Ray Wolfe and the following employees of the E.C. Brooks Correctional Facility (LRF): Warden Mary Berghuis, Deputy Warden Rick Smith, Assistant Warden Bobbie Smith, Assistant Deputy Warden Sandra D'Epifanio, Resident Unit Manager Mary Munday,[1] Grievance Coordinator J. Minnerick and Resident Unit Officer (unknown) Kanu.

In their complaint, Plaintiffs claim that Defendants violated their Eighth Amendment rights by failing to comply with state and federal law requiring tobacco-free living units for non-smoking prisoners. Plaintiffs made numerous complaints and filed grievances about the failure to enforce the smoking ban. Plaintiffs claim that Defendant Kanu began to threaten and harass them in retaliation for their complaints. On October 25, 2006, while Plaintiffs were sitting at a table in the day room at LRF, Defendant Kanu allegedly came in and told the other prisoners in the day room

---

[1] Defendant Munday has not entered an appearance in this case and is no longer a party to this action.

"that Plaintiffs Bagetta, Maxon, Swiatkowski and other white guys sitting at the round table wants [sic] the rules, policies and laws enforced, so now this is why all your [sic] prisoners are receiving [misconduct] tickets." (*Id.*)  Kanu also showed the prisoners the notice of intent that Plaintiffs had written to prison officials for not enforcing the laws, policies and rules regarding smoking.  Plaintiffs further claim that on October 30, 2006, Kanu advised Plaintiff Bagetta's roommate that he should move out of that room, stating "in case something happens to Bagetta, I don't want to see you harmed." (*Id.*)  In addition, Plaintiffs claim that on November 5, 2006, Kanu again came into the day room and told the prisoners that they all were getting misconduct tickets because "they [Plaintiffs] want me to do my job and enforce the rules."

Plaintiffs claim that Kanu's statements created a hostile environment and placed them in imminent danger of assault by other prisoners in violation of their Eighth Amendment rights.  On November 1, 2006, Plaintiffs sent Defendants a written "Prior Warning of Danger" to notify them of the threats, retaliation and harassment by Defendant Kanu.  Plaintiffs claim that Defendants failed to take corrective action to enforce the smoking ban and protect them from the hostile and dangerous environment created by Defendant Kanu in violation of the Eighth Amendment. (*Id.*)  Plaintiffs also contend that all staff conspired with Defendant Minnerick to prevent Plaintiffs from grieving their claims by placing them on modified access restriction.  Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages.

Defendants filed a motion for summary judgment on July 5, 2007, raising Plaintiffs' alleged failure to exhaust administrative remedies.  The court subsequently denied the motion because Defendants failed to satisfy their burden of proof.  (Docket #71 and #72.)

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs were ordered to file a response by November 10, 2008 (docket #83), but have failed to comply with this order. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that they are entitled to summary judgment on Plaintiffs claims of environmental tobacco smoke (ETS), lack of wheelchair tables, and dumping of kitchen waste because Plaintiffs lack standing to bring such claims. Defendants state that Plaintiffs have failed to

allege that they were personally harmed by the asserted violations. In order to establish standing to assert a claim under 42 U.S.C. § 1983, Plaintiffs must demonstrate an "injury in fact" that it is both "concrete and particularized" and is "actual or imminent." *Barden Detroit Casino, L.L.C. v. City of Detroit,* 230 F.3d 848, 854 (6th Cir.2000). As noted by Defendants, Plaintiffs have failed to allege that they were actually injured by the ETS, by the lack of wheelchair tables, or by the dumping of kitchen waste. Therefore, the undersigned recommends that the court find that Plaintiffs lack standing to assert these claims.

Moreover, the undersigned notes that in order to set forth an Eighth Amendment claim based on exposure to environmental tobacco smoke (ETS), Plaintiffs must demonstrate that they were exposed to unreasonably high levels of ETS, that there is more than a statistical probability that they will be injured by ETS, and that involuntary exposure to ETS violates contemporary standards of decency. *See Helling v. McKinney*, 509 U.S. 25, 35-36, 113 S. Ct. 2475, 2482 (1993). In addition, Plaintiffs must also demonstrate that their exposure to ETS was the result of deliberate indifference on the part of Defendants. *Helling*, 509 U.S. at 36-37, 113 S. Ct. at 2482. Plaintiffs have failed to set forth the necessary elements of an Eighth Amendment claim. Therefore, Plaintiffs' claims regarding ETS do not rise to the level of an Eighth Amendment violation.

With regard to Plaintiffs' claim that LRF dumps its kitchen waste outside in a pile, creating a health hazard in violation of the Eighth Amendment, Defendant Rick Smith attests that LRF has a composting program in which kitchen vegetables are utilized to replenish the nutrients in the soil. (*See* Defendants' Exhibit B, Rick Smith affidavit, ¶ 7.) The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's

necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The undersigned concludes that the presence of a compost in the prison yard does not rise to the level of an Eighth Amendment violation.

Plaintiffs claim that LRF does not have sufficient tables for wheelchairs in the yard or sufficient pathways for wheelchairs to the tables. However, as stated by Defendants, Plaintiffs fail to assert facts showing that Defendants knew of and disregarded an excessive risk to their health or safety. Therefore, this claim does not rise to the level of an Eighth Amendment violation.

Plaintiffs' claim that Defendant Kanu created a hostile environment, putting them at risk of harm from assaults from other prisoners or Defendant Kanu himself. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiffs must show that Defendant was deliberately indifferent to a risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Defendants state that Plaintiffs have failed to offer any evidence that they actually suffered any harm or that Defendant Kanu's alleged actions caused any inmates to actually threaten or attempt to harm them. Moreover, all of the Plaintiffs have been transferred to other prisons since the date the complaint was filed. Therefore, the most that Plaintiffs can show is that Defendant Kanu verbally harassed them. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Therefore, the undersigned recommends dismissal of Plaintiffs' hostile environment claims against Defendant Kanu.

Plaintiffs claim that Defendant Kanu harassed them in retaliation for filing grievances and complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights

violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiffs must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A specific threat of harm may satisfy the second requirement if it would deter a person of ordinary firmness from exercising his or her right to access the courts. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, No. 01-4033, 2001 WL 22400730, at *11 (6th Cir. Oct. 20, 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 2001 WL 22400730, at *11. As noted by the court in its May 30, 2007, opinion regarding Plaintiffs' motions for a temporary restraining order (docket #10), "Plaintiffs claim that they are in danger of assault by other prisoners; however, they do not allege one specific threat that they have received from another prisoner as a result of Officer Kanu's alleged conduct." In the opinion of the undersigned, Defendant Kanu's harassment is insufficient to deter a person of ordinary firmness from exercising his constitutional rights.

Moreover, a state prisoner fails to show a First Amendment violation based on his placement on modified grievance access, where modified access to the grievance process does not deny him the right or ability to seek redress for meritorious grievances, but merely requires him to obtain permission from the grievance coordinator to file a grievance. *Corsetti v. McGinnis*, 24 Fed.

- 7 -

Appx. 238, 241 (6th Cir. 2001). In this case, Plaintiffs' placement on modified access to the grievance procedure merely enabled prison officials to screen their grievances prior to filing to determine whether they were meritorious. See MDOC Policy Directive 03.02.130(II)(PP). Therefore, no adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct" was taken against Plaintiffs. *Kennedy v. Tallio*, 20 Fed. Appx. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis*, 24 Fed. Appx. 238, 241 (6th Cir. 2001) (both citing *Thaddeus-X*, 175 F.3d at 394). Therefore, Plaintiffs' retaliation claims are properly dismissed.

Plaintiffs claim that Defendants conspired with the grievance director to have them placed on modified access to the grievance procedure. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944.

Plaintiffs do not have a federally protected interest in the prison's grievance procedure. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995). However, a Michigan state prisoner's right to use the grievance procedure is not derived from mandatory language in a regulation, nor does placement on modified access to the grievance procedure constitute an "atypical and significant hardship" on a prisoner. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). In addition, the Sixth Circuit has addressed modified access to the grievance process and has held that such modified access does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. Rather, it merely requires the prisoner to obtain permission from the grievance

coordinator to file a grievance. *Corsetti v. McGinnis*, 24 Fed. Appx. 238, 241 (6th Cir. 2001). Because Plaintiffs have failed to show that there was a plan to take "unlawful action" against them, their conspiracy claims are properly dismissed.

Defendants Caruso, Straub, Wolfe, Berghuis, Rick Smith, Bobbi Smith, and D'Epifanio claim that they are entitled to summary judgment because they were not personally involved in the alleged misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a

time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiffs have not alleged facts establishing that Defendants Caruso, Straub, Wolfe, Berghuis, Rick Smith, Bobbi Smith, and D'Epifanio were personally involved in the activity which forms the basis of their claim. The only roles of Defendants Caruso, Straub, Wolfe, Berghuis, Rick Smith, Bobbi Smith, and D'Epifanio in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Straub, Wolfe, Berghuis, Rick Smith, Bobbi Smith, and D'Epifanio cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the undersigned recommends that the Court find that Defendants Caruso, Straub, Wolfe, Berghuis, Rick Smith, Bobbi Smith, and D'Epifanio are entitled to summary judgment for lack of personal involvement.

In addition, Defendants correctly note that a transfer to another prison moots a prisoner's request for declaratory or injunctive relief. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because Plaintiffs were transferred to

other prisons from LRF following Defendants' alleged misconduct in this case, their claims for injunctive and declaratory relief are now moot. *Preiser*, 422 U.S. at 402-03; *Kensu*, 87 F.3d at 175.

Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As noted above, Defendants are entitled to summary judgment on the merits of Plaintiffs' federal claims. Therefore, the undersigned recommends that the court grant Defendants qualified immunity.

Finally, Plaintiffs also claim that Defendants have violated Michigan's Clean Indoor Air Act, M.C.L. 333.12601, *et seq.* and Executive Order 1992-3 governing smoking in government buildings. To the extent that Plaintiffs are claiming their state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719, 728 (6th Cir. 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S. Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).

In summary, in the opinion of the undersigned, Plaintiffs have failed to sustain their burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (docket #77) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 22, 2009